[Civ. No. 13849. Third Dist. June 24, 1974.]

TRAVELERS INSURANCE COMPANY, Plaintiff and Respondent, v. MAURICE BOUZER, Defendant and Appellant.

## COUNSEL

Paul J. Melee for Defendant and Appellant.

Barrett, Good, Newlan & Minoletti, Barrett, Newlan, Minoletti & Matheny and Claude W. Vanderwold for Plaintiff and Respondent.

## OPINION

**PIERCE, J.**\*—In this declaratory relief action following summary judgment in favor of plaintiff Travelers Insurance Company (Travelers), defendant Maurice Bouzer appeals.

The terms of Bouzer's policy of automobile liability insurance with Travelers included, as the law of the State of California requires, "uninsured motorist" coverage. The policy states that the insurer agrees "To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile."

In the policy there is the following definition of an "uninsured automobile": ". . . (a) an automobile with respect to the ownership, maintenance or use of which there is no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization responsible for the use of such automobile . . . ."

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

The requirement of California law relative to the inclusion of an "uninsured motorist" clause is set forth in Insurance Code section 11580.2, subdivision (a). It provides inter alia: "No policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be issued or delivered in this state to the owner or operator of a motor vehicle, or shall be issued or delivered by any insurer licensed in this state upon any motor vehicle then principally used or principally garaged in this state, unless the policy contains, or has added to it by endorsement, a provision with coverage limits at least equal to the financial responsibility requirements specified in Section 16059 of the Vehicle Code insuring the insured, his heirs or his legal representative for all sums within such limits which he or they, as the case may be, shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle. . . ." (Other provisions of § 11580.2 are irrelevant to our discussion on this appeal.)

There is no contention here that the provisions of Travelers' policy did not comply with the requirements of section 11580.2, subdivision (a). Travelers' insurance included uninsured motorist coverage up to the limits then required by Vehicle Code section 16059, $10,000.

Bouzer, among several other persons, was injured in an automobile accident as the result of the negligence of one Waters. Waters carried personal liability and property damage insurance with Royal Globe Insurance Company. The limits of its liability were $25,000 for any single occurrence. During the course of litigation Royal Globe paid out a total in excess of $19,000 to the other persons involved as tort victims. It offered the remainder—up to the limits of its liability—to Bouzer in settlement of his claim; Bouzer refused, claiming special damages exceeding $7,000 and general damages greatly exceeding that amount.

Travelers first brought an action in declaratory relief against Bouzer. Bouzer answered, denying Travelers' allegations and also cross-complained against Royal Globe contending that it, with notice of Bouzer's claim, had paid out the amounts of its coverage to other alleged tort victims without apportionment. or court order. Travelers moved for summary judgment contending that no triable issue of fact was presented by its allegations or by the allegations affecting it in the cross-complaint. The trial court issued summary judgment on the motion. Bouzer, as stated, has appealed. It is to be noted that, whatever issues may be framed in the proceedings between Bouzer and Royal Globe, there is no contention that Travelers had acted collusively with Royal Globe or with anyone else. In other words, the re-

lations between Travelers and Bouzer *inter sese* are wholly independent of any activities of Royal Globe.

■ This appeal presents solely a question of statutory interpretation. The components of that question are these: (1) a tortfeasor "W" who is insured up to the limits of the financial requirements of Vehicle Code section 16059 by (2) an insurer "RG" who has paid, or offers to pay, up to the limits of its policy, (3) an automobile accident with several tort victims personally injured, (4) one such tort victim "B" who carries personal injury insurance with insurer "T," including as the law requires, "uninsured motorist" coverage up to the Vehicle Code section 16059 minimum limits, then $10,000. Query: Does the "uninsured motorist" requirement (quoted above) mean that insurer "T's" liability, although limited as aforesaid, expands automatically to provide full section 16059 coverage to "B," because "W's" insurer, "RG" (over which "T" neither possessed nor could exercise control) had paid out a large part of its coverage to pay the claims of other tort victims?

To state the question is to answer it. To accept defendant's proposition would effectually convert uninsured motorist coverage into a policy of excess accident insurance, and not excess insurance with any fixed limits, but insurance "open ended" at least to the limits of the uninsured motorist coverage. That is not the coverage for which the insured paid a premium, nor would it conform to any rational public policy. We hesitate to contemplate what premiums insured motorists would have to pay for uninsured motorist coverage should this court declare that to be the proper interpretation of the legislative intent.

Although this appears to be a case of first impression in California, no authority in this state even hints at such a rule.

### APPLICABLE LAW

Insurance Code section 11580.2 has been described as "part of a pattern of statutes which are 'designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others.' [Citation.] Such statutes must be liberally construed to carry out this objective of providing compensation for those injured through no fault of their own." (*Katz* v. *American Motorist Ins. Co.* (1966) 244 Cal.App.2d 886, 890-891 [53 Cal.Rptr. 669]; *Allstate Ins. Co.* v. *Smith* (1970) 9 Cal.App.3d 898, 902 [88 Cal.Rptr. 593]; *Valdez* v. *Federal Mut. Ins. Co.* (1969) 272 Cal.App.2d 223, 226 [77 Cal.Rptr. 411]; *Taylor* v. *Preferred Risk Mut. Ins. Co.* (1964) 225 Cal. App.2d 80, 82 [37 Cal.Rptr. 63] (hg. den.).) Such language has been

applied not only to cases involving both "uninsured motorist coverage" tied to the "financial responsibility law" but, by our Supreme Court, to cases involving only the latter clause. (See *Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659, 671-672 [79 Cal.Rptr. 106, 456 P.2d 674].)

We believe clarification will be afforded this decision if we note the context in which the foregoing generalization is stated. In *Taylor* v. *Preferred Risk Mut. Ins. Co., supra,* 225 Cal.App.2d 80, plaintiff was struck on a California highway by a car registered and principally used in Texas. Liability insurance on the Texas car was carried by a Texas company not licensed as an insurer in California. The policy provisions had maximum limits of $5,000 for injury to one person. The appellate court reconciled provisions of the "uninsured motorist" statute which requires coverage limits equal to those required by the California financial responsibility law but on the other hand defines an uninsured motor vehicle as one to which no bodily injury liability insurance is applicable. The court resolved the conflict by construing an uninsured vehicle to be a vehicle carrying insurance or a bond in limits less than the California financial responsibility laws. The court concluded that this resolution more nearly approached the legislative intent behind the statute. (*Id.* at p. 82; see also *Kirkley* v. *State Farm Mut. Ins. Co.* (1971) 17 Cal.App.3d 1078 [95 Cal.Rptr. 427].)

In *Katz* v. *American Motorist Ins. Co., supra,* 244 Cal.App.2d 886, the court held that the term "uninsured motor vehicle" included a vehicle which was insured by a company which became insolvent after a determination of liability on the part of the vehicle's operator. The court applied a portion of the code section which has not been set out above (i.e., § 11580.2, subd. (b), which provides in part that an uninsured motor vehicle may be one on which there is insurance, but the company issuing the policy denies coverage thereunder). The appellate court held that denial of coverage need not be expressed, but may effectively be made by the conduct of the insurer as well as by its spoken word. (*Id.* at pp. 889-890.) The court concluded "[t]he statutory objective is not attained by giving the injured person a claim against an insolvent. Our conclusion is that an insurer who becomes insolvent 'denies coverage' within the meaning of section 11580.2, subdivision (b); that Compton's vehicle is therefore an 'uninsured motor vehicle'; and that plaintiff here is entitled to the protection afforded by the policy written by defendant with respect to uninsured motorists." (*Id.* at p. 891; see also *Firemen's Ins. Co.* v. *Diskin* (1967) 255 Cal.App.2d 502 [63 Cal.Rptr. 177].)

Similarly, in *Calhoun* v. *State Farm Mutual Auto. Ins. Co.* (1967)

254 Cal.App.2d 407 [62 Cal.Rptr. 177], the appellate court held under the authority of *Taylor* v. *Preferred Risk Mut. Ins. Co., supra,* that a vehicle carrying insurance under the statutory limits was an uninsured vehicle for purposes of the uninsured motorist coverage.

Bouzer cites the recent case, *Security Nat. Ins. Co.* v. *Hand* (1973) 31 Cal.App.3d 227 [107 Cal.Rptr. 439], as authority in his favor. There, however, the appeal involved a case where (to use the opinion's schematic outline, *id.* at p. 229): "Motorist H is involved in a three-car collision. His damages are in excess of $30,000 and are caused by the concurrent negligence of the other two drivers, X and M. There is no rational way to apportion the damages between X and M. X and his car are uninsured. M has liability insurance with a $15,000 per person limit. H's own policy includes the customary uninsured motorist coverage ("UMC") with a similar limit of $15,000. With his insurer's consent H collects $15,000 from M's insurer, which leaves him at least $15,000 short of being made whole. Is H's own insurer nevertheless discharged from any obligation under the UMC?" The opinion correctly decided the insurer, Security, would not be so discharged.

It will be noted that the issues involved in *Hand* are wholly unrelated to the issues involved in the case at bench. There the "UMC" carrier, Security, through its own interpretation of subrogation clause (g) of section 11580.2, sought to escape *all* uninsured motorist coverage. Basically, the *Hand* court was construing the subrogation clause and not the fundamental policy of section 11580.2. In *Hand* the "UMC" carrier was trying to avoid all of the indemnity for which a premium had been paid by its insured. In the case at bench the insured Bouzer claims his insurer, Travelers, is not liable for the coverage for which a premium had been paid, but for a claimed indemnity outside the risk assumed and one for which no premium had been paid.

Finally, Bouzer relies upon *Porter* v. *Empire Fire and Marine Insurance Company* (1970) 106 Ariz. 274 [475 P.2d 258]. *Porter* contains facts similar to the case before this court: A tort victim, Porter, received injuries in an automobile accident caused solely by the negligence of one Fitch. Four other parties were also injured. Fitch carried liability insurance with an insurer and the coverage was within the limits of the Arizona Financial Responsibility Act. Porter carried UMC insurance with Empire, whose policy (similar to that of Travelers here) complied with Arizona law, the provisions of which in respects relevant seem undistinguishable from California law in that uninsured motorist coverage must equal the minimum financial responsibility law. Empire there took the same position as is taken

by Travelers in our case. The Arizona Supreme Court held against it. As a part of the opinion, and among other cases, the court quotes at length from *Taylor* v. *Preferred Risk Mut. Ins. Co., supra,* 225 Cal.App.2d 80. But the Arizona Supreme Court fails to note, as we have, *supra,* the difference in the context of the quotation taken from *Taylor.* We say respectfully and deferentially that to describe as an "uninsured motorist" an insured whose sole insurance is with a company unauthorized to do business in the state where the accident occurs, is a far different thing with far different consequences than so to describe an insured who has fully and properly complied with a state's financial responsibility law.

None of the other cases cited to us in the comprehensive annotation in 26 A.L.R.3d 883, appear to stand for the sweeping rule sought by defendant.

Judgment is affirmed.

Richardson, P. J., and Janes, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 28, 1974. Tobriner, J. and Mosk, J., were of the opinion that the petition should be granted.