[No. A031390. First Dist., Div. One. Apr. 23, 1987.]

GOVERNMENT EMPLOYEES INSURANCE COMPANY, Plaintiff and Respondent, v.
DARLENE G. OLIVER et al., Defendants and Appellants.

**14**

COUNSEL

Gary G. Campbell and David G. Smith for Defendants and Appellants.

Sedgwick, Detert, Moran & Arnold, James L. Gault and Steven D. Roland for Plaintiff and Respondent.

OPINION

HOLMDAHL, J.—Insurance company sued for declaratory relief to determine its obligation under the uninsured motorist provision of one of its policies. The trial court held for the insurance company and rejected defendants' contention it must pay the policy limits for *each* negligent uninsured motorist involved in a multiple vehicle accident.

The judgment is affirmed.

### Statement of Facts

Defendant Linda C. Oliver suffered injuries in a multiple vehicle accident on March 8, 1981. Linda was a passenger on a motorcycle. None of the drivers, including the driver of the motorcycle nor any of the owners (if different) of the three vehicles, was insured. Negligence, if any, on the part of any of the drivers has yet to be determined.

At the time of the accident, Linda was an insured under a policy of insurance that Government Employees Insurance Company (hereafter, GEICO) had issued to Darlene Oliver, Linda's mother. Linda submitted a claim for her injuries. GEICO offered and paid Linda $15,000, the policy limit for uninsured motorist coverage. Linda accepted the payment, but reserved the right to assert that GEICO's liability exceeded $15,000.

### Procedural History

On October 20, 1982, GEICO filed a complaint for declaratory relief in Alameda County Superior Court. GEICO sought to establish that its

maximum liability under the policy was $15,000, and that the payment to Linda was a full and complete satisfaction.

The Olivers answered the complaint and then moved the court for an order granting summary adjudication of the issues against GEICO. The trial court denied the motion as a matter of law.

The parties agreed that judgment should be entered against the Olivers and in favor of GEICO. They filed a stipulation regarding the facts and agreed that for insurance coverage purposes, only one accident occurred. The issue of whether the policy provided coverage up to the liability limit of $15,000 for *each* negligently operated vehicle that caused Linda's injuries was preserved for appeal.

Judgment was entered January 18, 1985, and this appeal followed.

*Recovery for Each Uninsured Motorist*

A. *Policy Limits*

The relevant clauses of the insurance policy are contained in section IV —"Uninsured Motorists Coverage." Under the heading "Losses GEICO Pays," the policy states: "Under the Uninsured Motorists Coverage we will pay damages for bodily injury caused by accident which the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle or a hit and run motor vehicle arising out of the ownership, maintenance or use of that motor vehicle.

"The amount of the insured's recovery for these damages will be determined by agreement between the insured or his representative and us. The dispute will be arbitrated if an agreement cannot be reached." [Emphasis in policy.]

Under the heading "Limit of Liability," the policy states: "Regardless of the number of autos or trailers to which this policy applies:

"1.   The limit of liability for Uninsured Motorists Coverage stated in the declarations as applicable to 'each person' is the limit of our liability for all damages, including those for care or loss of services, due to bodily injury sustained by one person as the result of one accident.

"2.   The limit of liability stated in the declarations as applicable to 'each accident' is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and

loss of services, because of bodily injury sustained by two or more persons as the result of one accident." [Emphasis in policy.]

The policy declaration does not appear in the record.[1]

■ The Olivers assert the policy does not specifically limit liability to $15,000 where more than one negligent uninsured motorist causes the insured's injuries.[2] ■ Coverage clauses should be interpreted broadly, while exclusionary clauses should be interpreted narrowly. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 101-102 [109 Cal.Rptr. 811, 514 P.2d 123].) Ambiguous clauses are construed against the insurer. (*Ibid.*)

■ The coverage clause above ("Losses GEICO Pays") allows an insured to recover all damages for bodily injury sustained in an accident. The number of vehicles involved appears to be irrelevant. The amount recoverable, however, is limited to the amounts stated in the policy declaration. Again, the limiting or exclusionary clause (limit of liability) focuses on the injuries sustained "as a result of one accident."

The parties stipulated that only one accident occurred. Therefore, the policy limits recovery to the amount set forth in the policy declaration for injuries to one person—$15,000 as found by the trial court. ■ When an insurance company limits its coverage in plain language, those "limitations must be respected." (*Darrah* v. *California State Automobile Assn.* (1968) 259 Cal.App.2d 243, 246 [66 Cal.Rptr. 374].)

B. *Minimum Statutory Requirements*

Every policy of auto insurance issued in this state must provide uninsured motorist coverage equal to or greater than that required by Insurance Code section 11580.2.[3] As effective at the time of the accident, section 11580.2, subdivision (a) (1), provided, in pertinent part: "No policy of bodily injury liability insurance covering liability arising out of the ownership, mainte-

---

[1] That the policy declaration provided uninsured motorist coverage in the amounts of $15,000 per person and up to $30,000 per accident for two or more persons appears undisputed. The Olivers' opening brief and the stipulated facts state that the "issue is whether or not GEICO's policy . . . provides uninsured motorist . . . $15,000 for each negligently operated motor vehicle. . . ." (Emphasis in the original.) The dispute is over the interpretation of the policy language.

[2] The Olivers contend that at least two of the drivers in this case were negligent. Both in their briefs and at oral argument, the Olivers urged that they should be entitled to recover up to the policy limits ($15,000) for each negligent uninsured motorist. The conclusion one must reach from this line of reasoning is that, if all three uninsured motorists were found negligent, Linda could recover up to $45,000. Therefore, it is clear that the Olivers are contending that the $30,000 per accident limit in the GEICO policy does not apply in this case.

[3] Unless otherwise noted, all statutory references are to the Insurance Code.

nance, or use of any motor vehicle, ... shall be issued or delivered in this state to the owner or operator of a motor vehicle, or shall be issued or delivered by any insurer licensed in this state upon any motor vehicle then principally used or principally garaged in this state, unless the policy contains, or has added to it by endorsement, a provision with coverage limits at least equal to the financial responsiblity requirements specified in Section 16056[4] of the Vehicle Code insuring the insured, his heirs or his legal representative for all sums within such limits which he or they, as the case may be, shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle. ...."

▮ The Olivers contend GEICO's policy does not provide the statutory minimum of uninsured motorist coverage required by section 11580.2. According to the Olivers, that section entitles Linda to recover an amount equal to that which would have been recovered from *each* negligent driver, had that driver been insured. The Olivers assert that at least two drivers were negligent in this case; therefore, Linda should be able to recover up to $30,000.[5]

The Olivers concede that no California case has addressed the issue of recovery under a single insurance policy, when multiple uninsured motorists are involved. (See 1 Eisler, Cal. Uninsured Motorist Law Handbook (4th ed. 1986) § 16.90, pp. 16-21.) However, they correctly state that section 11580.2 should be interpreted liberally to protect those injured through no fault of his or her own. (See, e.g., *Robles* v. *California State Auto. Assn.* (1978) 79 Cal.App.3d 602, 608 [145 Cal.Rptr. 115].) The Olivers cite *California State Auto. Assn. Inter-Ins. Bureau* v. *Huddleston* (1977) 68 Cal.App.3d 1061 [137 Cal.Rptr. 690] and *Security Nat. Ins. Co.* v. *Hand* (1973) 31 Cal.App.3d 227 [107 Cal.Rptr. 439] as cases in which the courts extended uninsured motorist coverage to protect injured claimants.

Both cases cited by the Olivers involved accidents in which insured and uninsured drivers were negligent. The claimants in both cases first recovered the policy limits from the insured motorist's insurer. The claimants then attempted to collect from their own insurance company under their uninsured motorist coverage. The courts agreed with claimants and allowed recoveries.

---

[4]Vehicle Code section 16056, subdivision (a), provides, in pertinent part: "No policy or bond shall be effective under Section 16054 unless ... the policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than fifteen thousand dollars ($15,000) because of bodily injury to or death of one person in any one accident and, subject to such limit for one person, to a limit of not less than thirty thousand dollars ($30,000) because of bodily injury to, or death of two or more persons in any one accident ...."

[5]See footnote 2, *ante.*

In both cases, however, the claimants recovered the policy limit for uninsured motorist coverage only once (in both cases, under their own policies). GEICO argues that uninsured motorist coverage is triggered where the insured is injured and has no other recourse. The statute focuses on the insured, not on insuring uninsured vehicles. Neither the *Hand* nor the *Huddleston* courts allowed recovery in excess of policy limits.

GEICO points out that the California courts have prevented the "stacking," or combining of two or more policies to provide additional coverage. (*Wagner* v. *State Farm Mutual Auto. Ins. Co.* (1985) 40 Cal.3d 460 [220 Cal.Rptr. 659, 709 P.2d 462]; *Barrett* v. *Farmers Ins. Group* (1985) 174 Cal.App.3d 747, 751 [220 Cal.Rptr. 135].) GEICO also cites the case *Travelers Ins. Co.* v. *Bouzer* (1974) 39 Cal.App.3d 992 [114 Cal.Rptr. 651], in which a tortfeasor's insurer paid out claims to several victims. After paying the claims of other injured parties, insufficient funds remained to satisfy claimant's damages. The court concluded that uninsured motorist coverage is not "excess accident insurance"; claimant could not resort to his own policy's uninsured motorist coverage. (*Id.* at p. 995.)

"It is obvious that the policy of the Insurance Code generally does not go beyond that of providing benefits payable under a liability policy containing minimum statutory limits. These limits are not and never have been adequate to make injured parties whole. That does not mean, however, that additional coverage under the uninsured motorist provisions is intended whenever the coverage under a negligent party's policy is inadequate." (*Interinsurance Exchange* v. *Alcivar* (1979) 95 Cal.App.3d 252, 268 [156 Cal.Rptr. 914].)

Claimants in *Alcivar*, like those in *Huddleston* and *Hand*, were involved in an accident with both insured and uninsured negligent drivers. The court extensively discussed *Huddleston, Hand, Bouzer* and other California cases. The claimants in *Alcivar* recovered from the insured negligent driver's insurer under both the liability and the uninsured motorists provisions of the negligent driver's policy. The court held section 11580.2, subdivision (c)(2),[6] allowed claimants' insurer to offset any uninsured motorist payment received by claimants, against its obligation under the policy. Under these circumstances, section 11580.2, subdivision (c)(2), allowed the insurer to limit claimant to one uninsured motorist recovery. The fact that claimants

---

[6]Section 11580.2, subdivision (c)(2), provides: "(c) The insurance coverage provided for in this section does not apply either as primary or as excess coverage to:

"............................................................

"(2) To bodily injury of the insured while in or upon or while entering into or alighting from a motor vehicle other than the described motor vehicle if the owner thereof has insurance similar to that provided in this section."

were not fully compensated did not negate the effect of the policy exclusion. (*Interinsurance Exchange* v. *Alcivar, supra,* 95 Cal.App.3d at p. 257.)

GEICO notes that this issue arose after an accident occurring in Virginia. Both the federal district court and Virginia Supreme Court decided claimants could recover up to their uninsured motorist policy limits only once. (*State Farm Mutual Automobile Insurance Co.* v. *Drewry* (W.D.Va. 1961) 191 F.Supp. 852, 859-860, affd. *per curiam* (4th Cir. 1963) 316 F.2d 716; *Drewry* v. *State Farm Insurance Company* (1963) 204 Va. 231 [129 S.E.2d 681, 684-685].) Two uninsured motorists simultaneously struck the Drewrys' auto. The collision killed Mrs. Drewry and caused serious injuries to Mr. Drewry and their daughter. Their policy provided uninsured motorist coverage of $15,000 per person for bodily injury, up to a maximum of $30,000 per accident (two or more persons).

The pertinent part of Code of Virginia, section 38.1-381, provided: "(b) Nor shall any such policy or contract be so issued or delivered unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than the requirements of Section 46.1-1(8), as amended from time to time, of the Code herein . . . ."

Code of Virginia, section 46.1-1(8), sets the minimum requirements at $15,000 per person and $30,000 for two or more persons.

Both courts rejected the Drewrys' contention that the effect of Virginia's Uninsured Motorist Law was to provide insurance for each uninsured vehicle up to the statutory limit. The fact that the statute set minimum requirements persuaded the courts to conclude that the state Legislature intended to provide some compensation, but not necessarily full compensation. The statute was not designed to provide compulsory insurance for every vehicle. (*Drewry* v. *State Farm Insurance Company, supra,* 129 S.E.2d at p. 685.)

Similar to the Virginia statute, section 11580.2, subdivision (a)(1), provides that insurance companies must, as a minimum, provide uninsured motorist coverage equal to the requirements of Vehicle Code section 16056 ($15,000/$30,000). The Olivers contracted for this minimum amount of coverage. Regardless of the number of uninsured motorists or vehicles involved, the policy limits recovery to $15,000 in this case, and that limitation appears permissible under section 11580.2.

The Olivers propose that a recent amendment to section 11580.2 (eff. Jan. 1, 1985) settled this issue. Subdivision (q) provides: "Regardless of the

number of vehicles involved whether insured or not, persons covered, claims made, premiums paid or the number of premiums shown on the policy, in no event shall the limit of liability for two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to injured persons."

According to the Olivers, this amendment specifically limits uninsured motorist coverage to one negligently operated vehicle, regardless of the number of uninsured motorists involved. The Olivers contend this amendment withdrew an "implied existing prior right" to be compensated for each negligent vehicle causing injury. It follows, state the Olivers, that the law in existence at the time of the accident allowed multiple recoveries.

Without attempting to interpret subdivision (q) (neither party contends this subdivision should be applied retroactively), it is sufficient to note that the statute codified the previous case law that prevents the "stacking" of multiple insurance policies. (*Barrett* v. *Farmers Ins. Group, supra,* 174 Cal.App.3d at p. 751, fn. 2; 1 Eisler, Cal. Uninsured Motorist Law Handbook, *supra,* § 15.60, at p. 15-10.) While it is not clear if subdivision (q) was intended to prevent multiple recovery under a single policy in a case in which multiple uninsured vehicles or drivers are involved, it is clear that the statute was not intended to withdraw a "prior right." The Olivers' contention that subdivision (q) changed the law in effect at the time of the accident must be rejected.

The provision in the policy issued by GEICO, limiting uninsured motorist coverage to the amounts specified in the policy declaration, provided the minimum coverage required by section 11580.2. The judgment of the trial court must be upheld.

## C. *Unjust Enrichment*

The Olivers' final contention is that GEICO will be unjustly enriched if Linda is prevented from recovering from each negligent motorist. GEICO may pursue any of the three drivers under its right of subrogation provided by section 11580.2, subdivision (g). The Olivers believe Linda cannot proceed against any of the drivers without infringing on GEICO's rights.

The Olivers have misread subdivision (g) and the case law interpreting it. Subdivision (g), as effective at the time of the accident, provided: "The insurer paying a claim under an uninsured motorist endorsement or coverage shall be entitled to be subrogated to the rights of the insured to whom such claim was paid against any person causing such injury or death *to the extent*

*that payment was made.* Such action may be brought within three years from the date that payment was made hereunder." (Italics added.)

█ When the injured party has not been fully compensated, "the subrogation rights of the uninsured motorist carrier are subservient to the right of the injured party to be fully compensated to the extent possible . . . ." (*United Pacific-Reliance Ins. Companies* v. *Kelly* (1983) 140 Cal.App.3d 72, 77 [189 Cal.Rptr. 323], citing *Security Nat. Ins. Co.* v. *Hand, supra,* 31 Cal.App.3d at p. 227.) █ Neither section 11580.2 nor anything in the insurance policy prevented Linda from proceeding against the drivers in this case and attempting to collect her full damages, after recovering under the GEICO policy. (*Johnson* v. *Oliver* (1968) 266 Cal.App.2d 178, 181-182 [72 Cal.Rptr. 137]; see, 1 Eisler, Cal. Uninsured Motorist Law Handbook, *supra,* § 17.31, p. 17-12.) GEICO'S receipt for the payment of the $15,000 to Linda states that "these funds are not to be construed as full settlement of all claims presented by Linda Oliver."

The court in *Johnson* noted, "It would not be consonant with the purpose of section 11580.2 . . . to hold that by resort to the policy provision here involved the injured person surrendered her entire cause of action against the tortfeasor irrespective of whether the payment received by her under the policy was commensurate with the extent of the damages suffered by her." (*Johnson* v. *Oliver, supra,* 266 Cal.App.2d at p. 182.)

As is often the case when uninsured motorists are involved, an injured party suffers here through no fault of her own. Section 11580.2 provides for a minimum amount of compensation; that section is not intended to make an injured party whole. (*Interinsurance Exchange* v. *Alcivar, supra,* 95 Cal.App.3d at p. 268.) GEICO has not gained at Linda's expense and, therefore, the Olivers' assertion does not justify the reversal of the judgment of the trial court.

The judgment is affirmed.

Racanelli, P. J., and Elkington, J., concurred.